UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
```
JOHN E. PEARSON,

        Plaintiff

        v.

UNITED STATES OF AMERICA,

        Defendant.
```
* * * * * * * * * * * * * * * * * * * * * * * * *
```

CIVIL ACTION NO.:
10-11410-EFH

# **MEMORANDUM AND ORDER**

December 22, 2011

HARRINGTON, S.D.J.

This matter comes before the Court on the United States' Motion to Dismiss the Plaintiff's Amended Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff, a former real estate developer, brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, alleging that the Federal Deposit Insurance Corporation ("FDIC") was negligent in its management and liquidation of loans that Plaintiff and his affiliated companies had with several New England banks which failed during the real estate collapse of the early 1990s and for which the FDIC was appointed as receiver. As set forth below, the Court allows-in-part and denies-in-part the United States' motion.

Background

      The following facts are taken primarily from the Amended Complaint, with certain

undisputed facts taken from the briefs and attachments filed by the parties in connection with the present motion.

Plaintiff had been a real estate developer in New England for thirty years when, in the early 1990s, the real estate market collapsed. At the time of the market collapse, the Plaintiff, through his affiliated companies, had a number of real estate development projects underway. The Plaintiff's companies obtained financing for the projects by obtaining loans, for which the Plaintiff was a personal guarantor, from various banks across New England, including Capitol Bank & Trust Co. ("Capitol" or "Capitol Bank"), Bank of New England, N.A., Connecticut Bank & Trust Co., and Maine Savings Bank. The loans from these banks were to be repaid as the properties from the projects were completed and sold. As a result of the economic downturn, however, the Plaintiff's companies defaulted on a number of the loans. The banks were also affected by the economic circumstances and, between 1990 and 1992, the FDIC was appointed receiver after each bank was closed due to insolvency or other financial difficulties. Each of the FDIC receiverships was a separate legal entity that is now terminated.

Two of Plaintiff's companies were Hargrave, Inc. ("Hargrave") and Bradgate Associates, Inc. ("Bradgate"). Both Hargrave and Bradgate had obtained loans from Capitol Bank to finance their development projects but subsequently defaulted on those loans. The FDIC was appointed receiver of Capitol Bank on December 30, 1990 and succeeded to all of Capitol's rights regarding the loans. See 12 U.S.C. § 1821(d)(2).

On April 6, 1992, the Plaintiff filed for bankruptcy under Chapter 7 and dissolved Hargrave. On or about March 25, 1994, the bankruptcy trustee filed an FTCA administrative claim with the FDIC on behalf of the Plaintiff. That claim asserted that the FDIC had caused the

2

Plaintiff to file for bankruptcy and incur personal injury and property damage in the amount of approximately $18.5 million as the result of negligence by David Bigda, the FDIC account officer to whom the Capitol Bank loans were assigned, and other unnamed FDIC personnel. The administrative claim accused Bigda and other FDIC personnel of "deliberately failing to follow FDIC policy and regulations in dealing with the claimant and also failing to deal with claimant fairly in good [sic] and equally with others similarly situated."

On that same date, the bankruptcy trustee also filed an FTCA claim with the FDIC on behalf of Hargrave alleging damages of $355,000 caused by "[n]egligence on the part of David Bigda and other representatives of FDIC . . . in failing to follow the practices and policies established by FDIC in dealing with claimant resulting in loss of assets."

Both administrative claims made specific reference only to David Bigda and/or the Capitol Bank receivership. Neither of the administrative claims made any reference to the other receiverships.

The Plaintiff commenced this FTCA action against the United States in August of 2010. The Amended Complaint alleges that David Bigda and other employees of the FDIC, acting in their respective capacities as receivers for Capitol Bank, Bank of New England, N.A., Connecticut Bank & Trust Co., and Maine Savings Bank, negligently breached a duty of care owed to the Plaintiff and his companies (Count 1); negligently failed to comply with certain provisions of the FDIC Credit Manual (Count 2); and negligently failed to supervise its agents and employees to insure compliance with FDIC rules, regulations and Manual (Count 3), causing irreparable harm and substantial financial damages.

With respect to the Capitol Bank receivership, the Plaintiff's claims set forth in the

Amended Complaint center on the alleged misconduct of David Bigda. Plaintiff alleges that, during the course of their dealings, Bigda acted in bad faith; refused to speak with his attorney; refused to provide Plaintiff with records relating to his loans; consistently refused to give Plaintiff access to the FDIC Credit Manual which stated that it should be provided to borrowers; required Plaintiff to provide financial information "on one certain form, which had language unacceptable to the Plaintiff"; and summarily rejected Plaintiff's proposed work-out plans without making any counter proposals in contravention to the FDIC Credit Manual. Plaintiff also alleges that Bigda either failed to respond to or summarily refused offers by third parties to purchase the Hargrave clubhouse and condominium units, which secured Hargrave's loans with Capitol.

Plaintiff, as sole shareholder of Hargrave, alleges that he succeeded to Hargrave's rights with respect to this action and elects to consider the FDIC's failure to respond within six months to the administrative claims filed on his and Hargrave's behalf as a final denial of those claims pursuant to 28 U.S.C. § 2675.

Analysis

a. Notice of claim requirement

As a general rule, in order to bring suit under the FTCA, a plaintiff must first file an administrative claim with the appropriate agency. 28 U.S.C. § 2675. Failure to file an administrative claim creates a non-waivable jurisdictional barrier to commencing litigation. 28 U.S.C. § 2675; Santiago-Ramirez v. Sec'y of the Dept. of Defense, 984 F.2d 16, 18-19 (1st Cir. 1993). "This process is intended to provide sufficient notice to the United States so that it can investigate the alleged incident of negligence." Ramírez-Carlos v. United States, 496 F.3d 41, 46 (1st Cir. 2007).

To satisfy the notice requirement, a plaintiff must provide (a) sufficient data for the agency

to investigate the claim, and (b) a specification of the damages sought. Santiago- Ramirez, 984 F.2d at 19. The notice requirement "'is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement.'" Ramírez-Carlos, 496 F.3d at 46-47 (citing Dynamic Image Tech., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000)).

The United States asserts that the administrative claims filed on behalf of the Plaintiff and Hargrave fail to satisfy the notice-of-claim requirement except as to those allegations in the Amended Complaint relating to the Capitol Bank receivership. The Plaintiff, on the other hand, contends that the administrative claims cover the entirety of the present action, including allegations made with respect to the receiverships other than the Capitol Bank receivership. The Plaintiff asserts that certain general language in the administrative claims, referring to "other FDIC offices" and Plaintiff's "affiliated companies" should be construed to have put the FDIC on notice of potential negligent conduct on the part of FDIC employees working on the other receiverships mentioned in the Amended Complaint.

The Court holds that the administrative claims are limited to the Capitol Bank receivership. The administrative claims' language cannot be construed to have put the FDIC on notice of any particular conduct or cause of action with respect to the other receiverships. Neither administrative claim refers to any bank or receivership other than Capitol or any of the other loans except for the loans with Capitol. Both administrative claims also expressly name only one FDIC employee, David Bigda, who is identified in the Amended Complaint as the account officer only for "the accounts, which the plaintiff and/or his various entities, including

Bradgate and Hargrave, had with Capitol." The Amended Complaint does not allege that Bigda worked on any of the accounts that Plaintiff had with other receiverships. The focus of both administrative claims is, thus, the alleged negligence of Bigda as account officer for the Capitol Bank receivership.

Furthermore, no other loans besides the Capitol Bank loans are referred to in the attachments to the administrative claims. Notably, the attachments include (1) a trial balance sheet entitled "FDIC/Capitol Bank & Trust Company Payoff Calculation For: John E. Pearson Affiliated Loans . . . Prepared by David Bigda"; (2) a Memo "Re: Capitol Bank" setting forth the amounts allegedly owed between Capitol Bank and Plaintiff's companies; and (3) a handwritten document entitled "Hargrave Inventory 12.28.90," referring to Hargrave, which was a Capitol Bank funded entity.

Moreover, one of the administrative claims describes damages as the result of the FDIC's failure to work out the Capitol Bank loans. According to the administrative claim, that failure allegedly caused the devaluation of the Plaintiff's companies leading to bankruptcy which, in turn, resulted in lost business opportunities and damage to the Plaintiff's reputation and standing in the community. No other bank besides Capitol Bank is mentioned in the specification of damages.

The general language in the administrative claims provides insufficient notice as to the allegations relating to the other receiverships. If such general language were deemed to be sufficient, the FDIC would be required to investigate any and all dealings that the Plaintiff may have had with any FDIC employee in any receivership without any particular guidance from the administrative claim documents. This would defeat the purpose of the notice provision.

The Plaintiff further argues that the FDIC for various reasons had actual knowledge of his

grievances with the other receiverships. This argument does not advance the Plaintiff's position as "[t]he test is whether the claim put the government on notice of the cause of action, not whether the government knew about the cause of action." Ramírez-Carlos, 496 F.3d at 47 (emphasis added).

Accordingly, all claims other than those relating to the Capitol Bank receivership are dismissed for failure to satisfy the notice-of-claim requirement under 28 U.S.C. § 2675.

b. Tortious conduct with respect to the Capitol Bank receivership

The FTCA authorizes civil tort actions against the United States for the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Plaintiff asserts in his brief that the FDIC, as a lender, breached a fiduciary duty that it owed to the Plaintiff, as a borrower, by acting in bad faith. The United States contends that no such fiduciary duty exists or was breached as to provide a cause of action that would serve as the basis for an FTCA claim.

The Amended Complaint itself makes no allegation that a "fiduciary" duty was owed by the FDIC. In fact, the Amended Complaint does not use the word "fiduciary" at all. Instead, Count 1 alleges that the FDIC "negligently breached its duty to refrain from acting in a manner which the FDIC knew or should have known would cause harm to the plaintiff." Both this District and the Massachusetts Supreme Judicial Court, however, have held that negligence claims asserted in a complaint encompass claims for breach of fiduciary duty, even where no fiduciary duty claim is specifically set forth. See Arthur D. Little Intern., Inc. v. Dooyang Corp., 928

7

F.Supp. 1189, 1205 (D.Mass. 1996) (where fiduciary duty not mentioned in complaint, court considered breach of fiduciary duty claim as same as negligence claim); Doe v. Harbor Schools, Inc., 843 N.E.2d 1058, 1060 n.4 (Mass. 2006) (treating negligence claims as a claim for breach of fiduciary duty). While the United States points out the failure on the part of the Plaintiff to make such an allegation, it does not strenuously object to the Plaintiff's ability to argue a negligence claim under a fiduciary duty theory. The Court, therefore, holds that the allegation of negligence set forth in Count 1 of the Amended Complaint encompasses the breach of fiduciary duty theory under which the Plaintiff now proceeds.

Under Massachusetts law,[1] a claim for breach of fiduciary duty is an affirmative cause-of-action sounding in tort. See Diamond v. Pappathanasi, 935 N.E.2d 340, 358 (Mass.App.Ct. 2010) (Breach of fiduciary duty is a "tort-based theory."). To prevail on such a claim, a plaintiff must show (1) the existence of a fiduciary duty arising from a relationship between the parties, (2) a breach of that duty, (3) damages and (4) causation. Hanover Ins. Co. v. Sutton, 705 N.E.2d 279, 288–89 (Mass.App.Ct. 1999).

With respect to the first element, a lender does not generally owe a fiduciary duty to a borrower. See FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 102 (1st Cir. 2009) ("[T]he relationship between a lender and a borrower, without more, does not establish a fiduciary

---

[1] The Plaintiff relies primarily on New Hampshire law to support his position that a fiduciary duty exists as the basis for his claim of negligence. The Amended Complaint, however, sets forth that "the acts or omissions complained of herein occurred within . . . Franklin, Norfolk County, Massachusetts." The Amended Complaint further refers to Massachusetts law as the "law of the place" and cites to Massachusetts law as the basis of the action. The FTCA sets forth that the tort law to be applied is that "of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, the Court concludes, for the purposes of ruling on this motion, that Massachusetts law applies.

relationship."). A fiduciary duty may, however, arise where the borrower reposes its trust and confidence in the lender and the lender knows of and accepts the borrower's trust. Id.

Massachusetts courts have determined that one such instance in which a fiduciary duty arises between a lender and a borrower is in the context of a foreclosure sale. See Colonial Operating Co. v. Poorvu, 27 N.E.2d 704, 706 (Mass. 1940) ("None of the parties stood in a fiduciary relation toward the plaintiff, except in the actual conduct of the foreclosure . . . ."); Pemstein v. Stimpson, 630 N.E.2d 608, 611 (Mass.App.Ct. 1994). When conducting such a sale, a lender owes the borrower a fiduciary duty to refrain from committing fraud, bad faith or failing to use reasonable diligence in the sales process. Pemstein, 630 N.E.2d at 611. Accordingly, an act of bad faith exhibited during a foreclosure sale would constitute a breach of the fiduciary duty. See id.

Here, the Amended Complaint alleges that Bigda committed bad faith during the Capitol loan foreclosure sales process. In particular, it alleges that the Plaintiff had obtained offers to purchase the properties secured by the Capitol Bank loans, but when those offers were brought to the attention of Bigda, they were summarily dismissed without a reply. The Plaintiff alleges that the purchasers that he had provided were, thus, treated differently than other purchasers in the foreclosure sales process and that the collateral properties were eventually sold for a substantially lower price than the Plaintiff's purchasers had offered. The Amended Complaint in addition sets forth allegations that the Plaintiff encountered a pattern of difficult behavior on the part of Bigda when dealing with the Capitol Bank receivership, including Bigda's refusal to talk to the Plaintiff's attorney or to read the Plaintiff's correspondence.

Bigda's conduct relating to the sale of the collateral properties is, under Massachusetts

9

law, subject to the heightened fiduciary standard requiring lenders to refrain from acting in bad faith. The allegation that Bigda refused to deal with Plaintiff's purchasers, as further evidenced by Bigda's history of contentious behavior towards the Plaintiff, constitutes a sufficient allegation of bad faith in the foreclosure sales process on the part of the FDIC. Accordingly, in conjunction with the allegation in the Amended Complaint of damages and causation, the Plaintiff has properly set forth a claim for breach of fiduciary duty with respect to Bigda's conduct during the foreclosure sales process of the Capitol Bank loan collateral properties.[2]

The Amended Complaint, however, fails to set forth any claim other than a breach of fiduciary duty claim relating to the foreclosure sales process of the properties secured by the Capitol Bank loans. With respect to all other allegations under Count I (negligent breach of duty), including those allegations relating to the rejection of a proposed work-out plan, the Plaintiff has failed to establish, under Massachusetts law, a comparable duty of care on the part of a private lender that would authorize a claim under the FTCA. See Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) ("It is the plaintiff's burden to prove the existence of subject matter jurisdiction.") (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir.), cert. denied,

---

[2] Plaintiff's claim for breach of fiduciary duty satisfies Federal Rule of Civil Procedure 12(b)(1) as it pertains to the jurisdictional requirement of 28 U.S.C. § 1346(b)(1). The claim also passes muster under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal quotation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The Court holds that the Amended Complaint contains enough factual matter to state a plausible breach of fiduciary duty claim.

515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995)). Similarly, with respect to all allegations under Count II (negligent failure to comply with FDIC Credit Manual), the Plaintiff has failed to establish a tort duty that could serve as the basis for a negligence claim requiring a private lender to abide by an internal manual. The claims in Count III (negligent supervision) are barred by the discretionary function exception to the FTCA.[3] Accordingly, all claims, with the exception of the breach of fiduciary duty claim relating to the foreclosure sales process of the Capitol Bank collateral properties, are dismissed.[4]

c. Statute of limitations

The United States argues that the sole remaining claim is barred by 28 U.S.C. § 2401(b), which provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." The United States asserts that the accrual of the claim occurred more than two years before the administrative claims were filed.

The administrative claim forms submitted on behalf of the Plaintiff and Hargrave are dated March 25, 1994. Therefore, the claim must have accrued at least on or after March 25, 1992 to be considered viable. The Amended Complaint sets forth October 21, 1991 and November 15,

---

[3] First Circuit case law establishes that claims of negligent supervision are traditionally barred under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). See Bolduc v. United States, 402 F.3d 50, 60-62 (1st Cir. 2005); Attalah v. United States, 955 F.2d 776, 784-85 (1st Cir. 1992). Plaintiff has failed to show how the FDIC supervisory role with respect to its employees is distinct from the role of the other agencies set forth in the controlling case law.

[4] Despite the Plaintiff's suggestion to the contrary, no contract claim or tortious interference with business relations claim is asserted in the Amended Complaint. The Amended Complaint solely sets forth three negligence-based counts.

11

1991 as the dates on which the Plaintiff alleges he or one of his representative informed Bigda of the pending offers to purchase the Capitol Bank loan collateral properties. Other allegations regarding the sale of the collateral properties, however, are not specified, including the date that the properties were sold to another party. The administrative claim forms give the date of the "accident" as occurring from January 15, 1991 to April 3, 1992. The Plaintiff, in his brief, asserts that the FDIC's failure "to realize a fair return from the disposition of the collateral" properties occurred between 1992 and 1994 but does not specify whether these dates correspond to the Capitol Bank properties.

There is, accordingly, no way for the Court to determine the particular date at which the Plaintiff was harmed by Bigda's failure to respond to the offers. Nevertheless, the Court concludes that the dates that are set forth in the Amended Complaint are close enough to the deadline for the matter to be resolved, at this stage, in favor of the Plaintiff. The Court shall, however, reconsider this issue at the close of discovery by way of a motion for summary judgment.

### d. Discretionary function exception

The United States argues that the sole remaining claim is barred by 28 U.S.C. § 2680(a), which excludes "[a]ny claim" from the FTCA that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The purpose of the exception is to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy" and "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect

certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808, 814 (1984).

A two-part test controls the determination of whether the discretionary function exception applies to a given claim. Thames Shipyard and Repair Co. v. United States, 350 F.3d 247, 254 (1st Cir. 2003). First, the court must determine whether the challenged conduct is "discretionary in nature" or, in other words, whether the conduct "involve[s] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (citation omitted). This part of the test is satisfied where no "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id. (citation omitted). Second, if the challenged conduct is discretionary, the court must assess whether the conduct is "of the kind that the discretionary function exception was designed to shield." Id. at 322-23 (internal quotations omitted).

Generally, the FDIC's conduct in selling assets is considered to be covered by the discretionary function exception. See, e.g., Santoni v. FDIC, 677 F.2d 174, 179 (1st Cir. 1982) (FDIC "vested with broad discretion to dispose of assets as it sees fit"). Nevertheless, the parties strongly contest whether certain provisions of the FDIC Credit Manual dealing with the foreclosure sales process prescribe a mandatory course of action for FDIC employees to follow, and that would, thereby, remove the present claim from the exception.

While both parties focus on the discretionary nature of the Manual, neither party refers to or explains the significance of a provision in the FDIC's enabling act which, as amended in 1991, requires the FDIC to "conduct its operations in a manner which [*inter alia*] maximizes the net present value return from the sale or disposition of assets; [and] ensures . . . fair and consistent treatment of offerors." 12 U.S.C. § 1821(d)(13)(E). If this provision was in effect at the time of

13

the alleged breach of fiduciary duty, it may have required Bigda to respond to the purchasers that were provided by the Plaintiff.  See Mosseri v. F.D.I.C. 104 F.3d 356, 1996 WL 734046, *3 (2nd Cir. Dec. 23 1996) (unpublished decision) ("Arguably, [§ 1821(d)(13)(E)'s] limit on the FDIC's discretion takes it out of the discretionary acts exception to the FTCA"); see also Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co., 93 F.Supp.2d 300, 309 (W.D.N.Y. 2000) (recognizing that "requirements [of 12 U.S.C. § 1821(d)(13)(E)] seem nondiscretionary").  But see Franklin Savings Corp. v. United States, 180 F.3d 1124, 1131 (10th Cir. 1999) (holding that the language, "maximization of value in the timely and efficient disposition of securities" is not a "specific and mandatory requirement" that would remove discretion).  Since the applicability of this provision of the enabling act may control the outcome of the case and neither party briefed the issue, the Court shall reserve its decision with respect to the discretionary function exception, including a decision relating to the discretionary nature of the FDIC Credit Manual, until the close of discovery by way of a motion for summary judgment.

In sum, the claim for breach of fiduciary duty in Count 1 related to the foreclosure sales process of the Capitol Bank collateral properties survives.  All other claims are dismissed.  The statute of limitations and the discretionary function exception issues raised by the United States shall be revisited at the close of discovery by way of a motion for summary judgment.

The United States Motion to Dismiss the Amended Complaint (Docket No. 16) is, hereby, ALLOWED-IN-PART and DENIED-IN-PART.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge